UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RAJEL JOHNSON**                                               **CIVIL ACTION**

**VERSUS**                                                      **NUMBER: 24-2510**

**CASSANDRA MATNEY, ET AL.**                                    **SECTION: "H" (5)**

<u>**ORDER AND REASONS**</u>

Before the Court pursuant to 28 U.S.C. § 636(c)[1] is the Motion to Dismiss (rec. doc. 16) filed by Defendants Nurse Cassandra Matney and Captain Barry Pittman (collectively, "Defendants"). Plaintiff has filed no opposition to the motion. Having reviewed the pleadings and the case law, the Court rules as follows.

**I.    Background**

Plaintiff, Rajel Johnson, brings this lawsuit under 42 U.S.C. § 1983 against Defendants, Cassandra Matney and Barry Pittman, alleging they were deliberately indifference to his medical needs and his living conditions while he was incarcerated at Rayburn Correctional Center ("RCC"). Plaintiff alleges that on December 15, 2023, he injured his hand while operating the prison deli slicer. (Rec. doc. 5 at 4). He informed prison kitchen security staff about the incident and was instructed to go to the infirmary for medical treatment. (*Id.*). Nurse Matney gave him a tetanus shot, two Tylenols, and wrapped his hand with gauze. (*Id.*). Matney instructed Plaintiff that his bandage would need to be changed every two hours and issued Plaintiff a seven-day no-work duty status. (*Id.*).

Johnson called his family to report his pain. (*Id.* at 5). His family then began to call RCC, which resulted in Plaintiff being sent to the infirmary later that same day at 3:00 p.m.

---

[1] The parties consented to proceed before the undersigned. (Rec. doc. 18).

to have his hand re-wrapped. (*Id.*). Matney informed Plaintiff that he could return to the infirmary at 8:00 p.m. for a bandage change. (*Id.*). Plaintiff asked to be seen by another nurse, who directed that Matney send Plaintiff to the emergency room. (*Id.*). Plaintiff further alleges that Matney never notified her supervisor of Plaintiff's injury. (*Id.*).

Five days after the incident, Plaintiff alleges that he was seen by Defendant, Captain Barry Pittman, who asked Plaintiff to sign a statement stating that he had been trained and given the meat-slicing safety test, though he alleges that he had never taken the safety test. (*Id.*). Further, Plaintiff alleges that he should never have been assigned to the meat slicing job because his "medical conditions deems him incapable to do so because of limited use of right arm/no weight bearing, medical duty status." (*Id.*). Additionally, Plaintiff now alleges that the blade protector/finger guard was missing from the deli slicer, and no kitchen security was present while he was operating the slicer. (*Id.*).[2]

Plaintiff makes no prayer for relief in his Complaint. (Rec. doc. 1). However, when Plaintiff filed his ARP, which he referenced in his Complaint, he asked for "no retaliation behind this ARP," "that his injury be taken more serious then [sic] as is from this day forward until it is healed," and "justice due to the pain, suffering, mental anguish and all damages." (Rec. doc. 16-2 at 31).

Johnson filed his ARP on January 7, 2024, which he references in his Complaint. (*Id.* at 30-31). The First Step Response to Plaintiff's ARP, issued on February 14, 2024, which Plaintiff attached as an exhibit to his Complaint, denied Plaintiff's request for relief, finding no merit to his claim. (Rec. doc. 1-2 at 1). The response detailed the following:

> In a statement by Nurse Cassandra Matney, she states that she cleaned the wound and applied a pressure dressing per orders. The on-call Healthcare

---

[2] Plaintiff did not allege this fact in his Request for Administrative Remedy ("ARP"). (Rec. doc. 16-2 at 30-31).

> Provider was notified and orders were received to monitor bleeding and circulation. You were given a seven day duty status until you could be re-evaluated by the facility physician. You were also administered a tetanus shot and Tylenol. You returned for bandage and circulation checks as instructed with no changes until approximately 4:30 p.m. when an increase in bleeding was noted. The on-call Health Care Provider was notified and an order was received to send you to Our Lady of the Angels for evaluation and treatment. At the hospital, a pressure dressing was applied and antibiotics and Naproxen were prescribed and you were discharged back to RCC. Upon returning to the facility, it is noted in your medical record that you were oriented, vitals were stable and you had no complaints. You were given instructions to return to the infirmary nightly for wound care and twice daily for antibiotics. You were issued a voucher for Naproxen and scheduled for a follow-up visit with the Healthcare Provider. You received appropriate medical treatment. Medical opinion is controlling. According to our documentation, you were properly trained to use the meat slicer on October 16, 2023, two months prior to the injury. You signed and dated an Acknowledgement of Safety Training for that specific piece of equipment.

(*Id.*). The Second Step Response to Plaintiff's ARP, which was issued on April 22, 2024, denied Plaintiff's request for relief and stated the following:

> Your request for an Administrative review of ARP #RCC-2024-34 had been received and remanded for further review. We are now in receipt of the institution's additional documentation. Your allegations have been considered as well as your medical record. A review of your medical record and the documentation forwarded by RCC staff was conducted. Based on these documents, it was found that when the unfortunate event occurred, security staff immediately reacted and you were promptly brought to the medical unit. You received appropriate medical care in accordance with the DOC Health Care Policy. Medical opinion is controlling. It is with regret that you received an injury; however, as indicated above, security staff was present and you received appropriate medical care in a timely manner. Lastly, the documentation forwarded by RCC staff included a copy of the "acknowledgement of Safety Training" for the machinery you were using when you received the injury in question. You have failed to provide any evidence to substantiate your allegations or that would cause us to believe otherwise. As such, this office finds no further investigation is warranted. Your request for relief is denied.

(*Id.* at 3).

On October 18, 2024, Plaintiff filed this lawsuit under Section 1983 against Matney and Pittman. (Rec. doc. 1)[3]. Plaintiff's Section 1983 claims appear to arise under the Eighth Amendment to the Constitution, more specifically, his claims of deliberate indifference to his medical care and possible allegations of unconstitutional conditions of confinement.

## II.   Standard on a Motion to Dismiss

Defendants move to dismiss Plaintiff's Complaint under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A court must consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits, considering that a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-87 (5th Cir. 2012); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998). Federal courts are courts of limited jurisdiction, and, without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *FEMA*, 668 F.3d at 286-87. Under Federal Rule of Civil Procedure Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.*

"The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)" except that the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in considering its subject matter jurisdiction over the claims in the suit. *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 676 (E.D. La. Aug. 2, 2012) (citing *Williams v. Wynne*, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)). When considering a 12(b)(1) motion, however, "the court

---

[3] His Original Complaint was marked "Deficient" by the Clerk's office. He corrected the deficiency and his Complaint was filed in the record on November 4, 2024. (Rec. doc. 5).

4

is permitted to look at evidence in the record beyond those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (stating that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Otherwise, a motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6) as outlined below. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). A motion to dismiss for lack of subject matter jurisdiction shall be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief. *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 318 (5th Cir. 2012). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]" *Id.* In federal question cases, such as here, the party must demonstrate a non-frivolous claim based on federal law. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939). When a district court finds that it lacks subject matter jurisdiction, its determination is not on the merits of the case and does not bar the plaintiff from pursuing the claim in a proper jurisdiction. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

Under Rule 12(b)(6), the district court "must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Schlesinger v. ES & H, Inc.*, No. 11-cv-294, 2011 WL 3900577, at *2 (E.D. La. Sept. 2, 2011) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)); *Napoleon v. Shows, Cali & Walsh, L.L.P.*, No. CV 20-1775, 2021 WL 5630895, at *4 (E.D. La. Dec. 1, 2021). A plaintiff must plead enough facts, if taken as true, to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A "formulaic recitation of the elements of a cause of action" will not meet this pleading standard. *Id.* at 555. Plausibility does not require a showing of probability as a well-pleaded complaint can proceed even if "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556. However, legal conclusions are not entitled to a presumption of truth for the purposes of a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Napoleon*, 2021 WL 5630895, at *4; *Pitts v. LeBlanc*, No. CV 22-1983, 2023 WL 7166169, at *1-2 (E.D. La. Oct. 31, 2023), *appeal dismissed*, No. 23-30811, 2024 WL 2150325 (5th Cir. Feb. 7, 2024).

### III.  Law and Analysis

#### A.  *Claims Against Matney and Pittman in Their Official Capacities*

Plaintiff does not specify whether he sues Matney and Pittman in their official or individual capacities. To the extent that he sues them in their official capacities, his claims fail. It is well-established law that neither a State, nor its officials acting in their official capacities, are "persons" capable of being sued under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).[4] The State, its agencies, and its officers in their official

---

[4] This holding is an offshoot of the sovereign immunity afforded states, their agencies, and their officials under the Eleventh Amendment. *See Will*, 491 U.S. at 66-67 ("This does not mean, as petitioner suggests, that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues.

6

capacity are not considered "persons" for purposes of Section 1983.  *Archie v. LeBlanc*, No. 08-CV-1381, 2010 WL 33522296, at *4 (W.D. La. Jul. 29, 2010), *report and recommendation adopted*, No. 08-CV-1381, 2010 WL 3522293 (W.D. La. Sept. 2, 2010), *aff'd*, 447 F. App'x. 591 (5th Cir. 2011) (citing *Reimer v. Smith*, 663 F.2d 1316, 1322 n. 4 (5th Cir. 1981).  As the Fifth Circuit stated in *Fairley v. Stalder*, "'neither a State nor its officials acting in their official capacities are 'persons' under § 1983.'  As § 1983 only provides a remedy against a 'person,' the dismissal of Fairley's § 1983 claims was indisputably proper."  294 F. App'x. 805, 808-09, 2008 WL 3244022, at *3 (5th Cir. 2008) (quoting Will, 491 U.S. at 71).  Thus, "long and clearly established Supreme Court precedent on this matter," indicates that all claims for equitable or monetary relief under Section 1983 against Defendants in their official capacities lack an arguable legal basis and are therefore dismissed.  *See Fairley*, 294 F. App'x. at 808.

### B. *Claims Against Matney and Pittman in Their Individual Capacities*

#### 1. Inadequate Medical Care

To establish an Eighth Amendment violation regarding inadequate medical care, Plaintiff must prove that Defendants' conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

---

Certainly they are.  But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it.").

Although the Eighth Amendment "does not, by its precise words, mandate a certain level of medical care for prisoners[,]" *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999), the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive "adequate" medical care. *Farmer*, 511 U.S. at 832. In the context of Section 1983 lawsuits, a showing of deliberate indifference to serious medical needs "requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). The delay of medical care "can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). "Mere negligence or failure to act reasonably is not enough." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003). Even "gross negligence" does not establish deliberate indifference. *Hernandez ex. Rel. Hernandez v. Tex. Dep't. of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (citing *Conner v. Travis Cnty.*, 209 F.3d 79, 796 (5th Cir. 2000)). Rather, "[an] officer must have the subjective intent to cause harm." *Mace*, 333 F.3d at 626 (citing *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). The Supreme Court has affirmed that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of the Cnty. of Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversights." *Gonzalez v. Ysleta Indep. School Dist.*, 996 F.2d 745,

756 (5th Cir. 1993) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992) (alteration omitted).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). "Deliberate indifference is not established when 'medical records indicate that the plaintiff was afforded extensive medical care by prison officials.'" *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)) (alterations omitted).

Plaintiff alleges that Matney "had actual knowledge of the objectively cruel conditions that is a serious medical need, when she treated Rajel Johnson['s] wounded left hand that had Plaintiff in server [sic] pain and (2) did not respond reasonably to the risk, by not informing her supervisors the extent of Plaintiff injury to avoid sending Plaintiff to the Hospital." (Rec. doc. 5 at 6). However, a review of Plaintiff's ARP shows that, on December 15, 2023, the date Plaintiff sustained his injury, he was seen a total of five times in the RCC infirmary by both Matney and other healthcare providers for wound care, bleeding assessment, wound dressing changes, medication and a tetanus shot, with a follow-up visit scheduled for three days later. (Rec. doc. 16-2 at 7-13). He was also transported to Our Lady of the Angels Hospital that same day when his bleeding continued. (*Id.* at 15). The record also reveals that the decision to send Plaintiff to Our Lady of the Angels had nothing to do with Plaintiff's family calling. (*Id.* at 6). Plaintiff himself admits in his Complaint that he was seen in the infirmary multiple times on the date of the incident,

9

was instructed that his bandage would need changing every two hours, and was given a seven-day no-duty status as a result of his injuries. (Rec. doc. 5 at 4-5).

In *Stewart v. Murphy*, the Fifth Circuit held that prison officials did not act with deliberate indifference when the officials cleansed and treated the inmate's bedsores and transferred the inmate to another hospital for examination when the inmate's sores did not significantly improve. 174 F.3d 530 (5th Cir. 1999). Similarly, in *Raspberry v. Johnson*, the Fifth Circuit held that the plaintiff-inmate who sustained a hand injury and bruised head had failed to allege either a serious medical condition or deliberate indifference to a serious medical condition when the injuries healed on their own, he did not suffer any broken bones in his hand, and he was examined by medical personnel for his injuries. No. 00-40591, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. Nov. 29, 2001).

Similar to the complaints in *Stewart* and *Raspberry*, the facts and allegations in Plaintiff's Complaint are insufficient to satisfy the stringent "deliberate indifference" standard. Plaintiff alleges no further pain and/or suffering at the time that he filed his Complaint and alleges no permanent damage. There are certainly no allegations in his Complaint that would evince a wanton disregard for any of Plaintiff's serious medical needs. Therefore, Plaintiff has not carried his burden of alleging an Eighth Amendment violation based on deliberate indifference to his medical needs, and his claims are dismissed with prejudice.

2. Conditions of Confinement

Plaintiff also asserts a claim regarding his conditions of confinement at RCC. This claim appears to be levelled at Captain Barry Pittman who, according to Plaintiff, is the supervisor of the kitchen where Plaintiff injured his hand on the meat slicer. (Rec. doc. 5 at

5).  As noted above, Plaintiff alleges that "no protection was around the blade of the deli slicer, neither was officers present when the machine was in use, even with the plaintiff suffering medical condition." (*Id.*).  Specifically, Plaintiff alleges that

> It is well established that an employer has an obligation to provide his employees with a working place and conditions which are reasonably safe considering the nature of work.
> However, in the instant civil action Plaintiff was placed in danger due to the machinery being unsafe to perform task.  The deli slicer was designed to be operated with a blade protector and finger guard when the equiptment [sic] is in use, Also the deli slicer is suppose to be operation under the supervision of kitchen security.  Whereas kitchen security had known idea the finger guard existed.  Had Captin Barry Pittman ben ServSafe certified, Plaintiff would not have been assigned that job because of his medical conditions deems him incapable to do so because of limited use of right arm/no weight bearing, medical duty status.

(Rec. doc. 5 at 6) (quoted verbatim).  Plaintiff further alleges that he had never taken the meat-slicing safety test.  (*Id.* at 5).  This allegation is, however, belied by the documents attached to his Complaint and his ARP referenced in his Complaint.  (Rec. docs. 5-2 at 1, 16-2 at 2, 4-5).  Plaintiff's ARP indicates that Plaintiff had received safety training for "Buffalo Slicer Safety," and Plaintiff signed an Acknowledgement of Safety Training form on October 16, 2023, well before the subject incident.  (Rec. doc. 16-2 at 4-5).

"In order to establish an Eighth Amendment violation regarding conditions of confinement, an inmate must establish: first, that the deprivation alleged was sufficiently serious (i.e., an official's act or omission must have resulted in the denial of the 'minimal civilized measure of life's necessities') and second, that the prison official possessed a sufficiently culpable state of mind."  *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citing *Farmer*, 511 U.S. at 834).  "In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety."  *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991).  "The second requirement follows from the

principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id.* (quoting *Wilson*, 501 U.S. at 297).

"To meet the first requirement, the prisoner must show that the conditions, either alone or in combination, constitute an 'unquestioned and serious deprivation' of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021). "Extreme deprivations are required to make out a conditions-of-confinement claim." *Patin v. LeBlanc*, No. 11-3071, 2012 WL 3109402, at *12 (E.D. La. May 18, 2012) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)) (alterations omitted). "As to the second requirement, the prisoner must show that the defendant acted with more than mere negligence." *Id.* at 583 (citing *Farmer*, 511 U.S. at 835). As the Supreme Court stated in *Farmer*:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

511 U.S. at 837.

"In general, the state has a responsibility to protect the safety of its prisoners." *Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982) (citing *Streeter v. Hopper*, 618 F.2d 1178, 1182 (5th Cir. 1980)). "In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry." *Id.* "Nor is it bound by the standards set by the safety codes of private organizations." *Id.* "In certain circumstances, prison work conditions may amount to cruel

and unusual punishment." *Jackson v. Cain*, 864 F.2d 1235, 1245 (5th Cir. 1989) (holding that working conditions, in and of themselves, did not violate the Eighth Amendment, when plaintiff claimed that shoveling un-shucked corn in the summer heat, in contradiction to medical doctors' advice that he stay out of the sun due to his syphilis diagnosis, without a mask caused nose bleeds, hair loss, and facial sores). However, "this is the case only when prison officials knowingly compel convicts to perform physical labor which is beyond their strength or which constitutes a danger to their lives or health, or which is unduly painful." *Howard*, 707 F.2d at 220. "[I]f prison officials assign an inmate to work detail and they know that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference." *Mendoza v. Lynaugh*, 989 F.2d 191, 194 (5th Cir. 1993). "[T]he constitutionality of a particular working condition must be evaluated in light of the particular medical conditions of the complaining prisoner." *Jackson*, 864 F.2d at 1246.

Despite Plaintiff's claim that his medical conditions rendered him incapable of performing his job in the kitchen, Plaintiff's Offender Duty Status, which was issued to him on December 13, 2023, did not state that Plaintiff was unable to perform his kitchen duties. (Rec. doc. 5-1 at 1). Specifically, Plaintiff's duty status provided that Plaintiff "may do any work assignment not specifically prohibited on the medical duty status form" and "prohibited [Plaintiff] from participating in contact sports." (*Id.*). Plaintiff's duty status did not prohibit him from working his kitchen assignment, nor did his duty status prohibit him from operating equipment. (*Id.*). The ARP referenced in Plaintiff's Complaint reveals that Plaintiff was both trained to use the deli slicer, (rec. docs. 5-2 at 1, 16-2 at 5), and was able to do so within the bounds of his duty status. (Rec. doc. 5-1 at 1). As such, Plaintiff's

13

allegation that his kitchen job exceeded his duty status is a conclusory statement supported by neither his Complaint nor his ARP.  *See Jett v. Keith*, No. 15-CV-215, 2015 WL 4395042, at *4 (W.D. La. Jul. 16, 2015) (holding that inmate's claim that his kitchen job exceeded his duty status was conclusory when inmate failed to provide facts indicating when/where/how/who required him to perform labor beyond his duty status limitations, and what he was required to do that exceeded the limitations), *aff'd*, 667 F. App'x. 465 (5th Cir. 2016).  This conclusory allegation does not rise to the requisite level to show that Pittman acted with deliberate indifference to Plaintiff's safety in violation of Plaintiff's constitutional rights in assigning him to the kitchen.

Plaintiff also asserts liability under Section 1983 due to the "machinery being unsafe to perform task" because of the missing blade protector/finger guard.  (Rec. doc. 5 at 6). Federal courts in Louisiana and in other jurisdictions have addressed cases in which inmates have alleged Eighth Amendment violations in the context of prison safety equipment and defective prison equipment.  For example, in *Bowie v. Procunier*, the United States Fifth Circuit Court of Appeals held that prison officials did not violate the Eighth Amendment when the inmate lost sight in one eye when not provided safety goggles while chopping wood, as the Eighth Amendment's prohibition of cruel and unusual punishment "is simply not implicated by a *negligent* act of an official . . . ."  808 F.2d 1142, 1142 (5th Cir. 1987) (emphasis in original).

As another example, in *Nevers v. Holiday*, the plaintiff-inmate was injured while working in the kitchen when a nozzle "jumped off" and he sustained second and third degree burns to his hands.  No. 08-1316, 2010 WL 1795202, at *1 (W.D. La. Apr. 1, 2010), *report and recommendation adopted*, No. 08-1316, 2010 WL 1812763 (W.D. La. Apr. 30,

2010). He claimed that no one had tested the pot before he used it. *Id.* The United States District Court for the Western District of Louisiana held that the facts alleged in the plaintiff's complaint did not support a finding that the defendant's conduct was sufficiently harmful enough to deprive him of life's basic necessities (*Id.* at *2). The plaintiff did not allege that the defendants knew the pot and/or nozzles were defective, nor did the plaintiff allege any facts indicating that the defendants knowingly and unnecessarily placed him in a dangerous environment to the extent that his constitutional rights were violated.1 *Id.*

And, in *Osolinski v. Kane*, the United States Ninth Circuit Court of Appeals held that prison officials did not violate the Eighth Amendment in failing to repair a malfunctioning oven door, which fell off and burned the plaintiff's arm. 92 F.3d 934, 936. 939 (9th Cir. 1996). The Ninth Circuit held that "[n]ot every deviation from ideally safe conditions amounts to a constitutional violation." *Id.* at 938. The court further noted that the plaintiff had failed to allege any exacerbating safety hazards, like insufficient lighting, nor had the plaintiff "pled any conditions which rendered him unable to provide for his own safety in the sense that they precluded him from avoiding the faulty oven door or rendered him unable to perceive its defective condition." *Id.*

Plaintiff is unable to meet either of the aforementioned requirements to establish an Eighth Amendment violation regarding conditions of confinement. Even taking Plaintiff's allegations as true, Plaintiff has failed to establish that his assignment to the kitchen staff or his operation of the deli slicer, which allegedly lacked protective equipment, rises to the level of an "unquestioned and serious deprivation of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions," *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021), or establish that Pittman "kn[ew] of and disregard[ed] an

15

excessive risk to [his] health or safety . . . ." *Farmer*, 511 U.S. at 837.  First, the record reveals that Plaintiff had, in fact, received safety training in operating the deli slicer prior to the subject incident.  (Rec. doc. 16-2 at 4-5).  Second, Pittman did not act with deliberate indifference in assigning Plaintiff to the kitchen in violation of his medical condition, as Plaintiff's duty status did not prohibit him from operating the deli slicer.  (Rec. doc. 5-1 at 5).  Third, the facts alleged by Plaintiff regarding the lack of a finger guard on the deli slicer do not rise to such a level that would constitute a "serious deprivation of his basic human needs," *Hope*, 861 F. App'x at 582), and support a finding of a violation of Plaintiff's Eighth Amendment rights.  In short, Plaintiff's allegations do not rise to the requisite level to show that Pittman acted with deliberate indifference to Plaintiff's safety in violation of Plaintiff's constitutional rights, nor has Plaintiff alleged a "sufficiently serious" deprivation.

        3.      Injunctive Relief

While Plaintiff fails to specifically ask for injunctive relief in his Complaint, in his ARP he asked for "no retaliation behind this ARP" and "that his injury be taken more serious then [sic] as is from this day forward until it is healed."  (Rec. doc. 16-2 at 31).

With regard to any claim against Matney and Pittman in their official capacities, under the *Ex Parte Young* doctrine, a state official in his or her official capacity may be sued for prospective relief to stop an ongoing violation of the Constitution or federal law.  209 U.S. 123 (1908).  To determine whether *Young* applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Md., Inc., v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (additional citation omitted)).  Here, this Court has found

16

no violation of federal law as Defendants did not violate Plaintiff's Eighth Amendment constitutional rights. Accordingly, any injunctive relief against Matney or Pittman in their official capacities would be inappropriate.

And to the extent that Plaintiff attempts to assert a retaliation claim against Defendants in their individual capacities, he has no viable claim as he has only made conclusory allegations. With respect to such retaliation claims, the Fifth Circuit has held: "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1995). Individual capacity claims "must be pleaded with 'factual detail and particularity,' not mere conclusory allegations." *Jackson v. Widnall*, 99 F.3d 710 (5th Cir. 1996) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995)). "Allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Overall, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). In his Complaint, Plaintiff makes no allegations that Matney or Pittman took any retaliatory adverse action against him for having filed his ARP or this Complaint. Such a lack of factual support is fatal to his claim of retaliation.

### 4. Leave to Amend

"When the dismissal of a pro se complaint is appropriate, it should *generally* be done without prejudice in order to allow the plaintiff an opportunity to file an amended complaint." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 423 (5th Cir. 2017). (emphasis added) (citation omitted).

"However, a district court may dismiss with prejudice if the plaintiff has been given adequate opportunity to cure the inadequacies in his pleading or if the pleadings 'demonstrate that the plaintiff has pleaded his *best case*.'" *Id.* (first quoting *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986) (affirming dismissal with prejudice for failure to state a claim when plaintiff did not file a supplemental complaint but did file an extensive response to the defendants' motion to dismiss, alleging facts that suggested negligence but not deliberate indifference in a Section 1983 action) and then citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (affirming dismissal with prejudice of Section 1983 action brought by an inmate proceeding *pro se* and *in forma pauperis* who had no opportunity to amend his complaint but who was given a questionnaire to bring his claims into focus)).

This Court will "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), but leave to amend "is by no means automatic." *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted). In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted). Applying those factors here, the Court finds that any amendment regarding Plaintiff's claims would be futile, *Gilchrease v. D.R.*

18

*Horton, Inc. - Gulf Coast*, No. CV 24-358, 2024 WL 3223918, at *1 (E.D. La. May 16, 2024), because Plaintiff has pleaded his best case under the circumstances.

With regard to any official capacity claims against Defendants, no amendment can cure a finding that they are not "persons" under Section 1983. And with regard to any individual capacity claims against them, Plaintiff has pleaded his best-case scenario. He has alleged all the facts that occurred during and after his incident, and these facts still cannot rise to the level necessary to plead justiciable claims under the Eighth Amendment. Plaintiff filed no opposition to Defendants' motion to dismiss in order to clarify or enlarge any glaring deficiencies as pointed out in Defendants' motion. Neither has he moved for any type of discovery since Defendants appeared in this lawsuit in August of this year to further bolster any underlying facts. In short, he has done nothing to advance his claims or prove to this Court that he has alleged plausible claims under the Eighth Amendment. For these reasons, the Court finds that no amendment can render Plaintiff's claims viable under the Eighth Amendment.

**IV.    Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Motion to Dismiss (rec. doc. 16) filed by Defendants Nurse Cassandra Matney and Captain Barry Pittman is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  10th  day of      December      , 2025.

_____
**MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE**